UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIANNA MICKLATCHER,

     Plaintiff,

v.                                Case No. 1:12-cv-649
                                Hon. Janet T. Neff

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

Plaintiff was born on June 19, 1958 (AR 136).[1] She alleged a disability onset date of March 10, 2008 (AR 136). Plaintiff completed the 12th grade and had previous employment as a farm worker, an operations technician (assembler) in a factory and an airport security supervisor (AR 151, 160). Plaintiff identified her disabling conditions as: left shoulder limitations; neck injury; foot tendonitis; chronic left shoulder and neck problems; shoulder surgery in 2001; and lower back pain (AR 150). On March 23, 2011, an ALJ reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 12-20). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

**I. LEGAL STANDARD**

---

[1] Citations to the administrative record will be referenced as (AR "page #").

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

Claimant must prove that she suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

The ALJ found that plaintiff's claim failed at the fourth step. At step one, the ALJ found that plaintiff met the insured status requirements of the Act through December 31, 2013 and has not engaged in substantial gainful activity since the alleged onset date of March 10, 2008 (AR 14). At step two, the ALJ found that plaintiff has the following severe impairments: degenerative joint disease of the left shoulder with a history of decompressive resection; degenerative changes of

the cervical spine; and bilateral plantar fascitis (AR 14). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1, specifically Listings 1.02 (major dysfunction of a joints(s) (due to any cause)), 11.14 (peripheral neuropathies) and 14.09 (inflammatory arthritis) (AR 15).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) to perform a limited range of light work as follows:

> she cannot lift and/or carry more than ten pounds occasionally and less weight frequently; stand and/or walk for more than a total of six hours in an eight-hour workday; sit for more than a total of six hours in an eight-hour workday; balance, stoop, knee [sic] crouch, crawl, or climb more than occasionally; use the left upper extremity to reach above waist level; or work with concentrated exposure to respiratory irritants (fumes, odors, gases, poor ventilation, etc.).

(AR 15).

The ALJ found that plaintiff's past relevant work as an assembler and security guard, as generally performed, did not require the performance of work-related activities precluded by her RFC and that her medically determinable impairments did not prevent her from performing this past relevant work (AR 19). In reaching this determination, the ALJ found that while a substantial number of assembler and security guard jobs are performed at the medium level of exertion, "most are performed at the light exertional level" (AR 19). Although the ALJ resolved plaintiff's claim at step four, he noted that plaintiff could perform other light work in the regional economy (identified as the State of Michigan), including: guide / usher / greeter (14,000 jobs); and retail sales clerk (25,000 jobs) (AR 20).

Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, at any time through March 23, 2011 (the date of the decision) (AR 20).

**III. ANALYSIS**

Plaintiff has raised two issues on appeal.

**A.      The ALJ violated the treat physician rule.**

Plaintiff contends that the ALJ failed to give controlling weight to the opinions of her treating physician, Ronald Hoogmoed, M.D. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375

(6th Cir. 2013); 20 C.F.R. §§ 404.1527(c)(2) and § 416.927(c)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).

In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

On February 10, 2011, Dr. Hoogmoed filled out a form entitled "Medical Provider's Assessment of Patient's Ability to do Physical Work-Related Activities" (AR 315-18). The answers provided by Dr. Hoogmoed described a person who was essentially an invalid. According to the doctor, plaintiff could occasionally lift five pounds, but could not carry even that small amount of weight (AR 315). Plaintiff needed to use a cane four to five days a month, and could only walk for two minutes at a time (AR 315). According to the doctor, plaintiff could not adjust her posture, i.e., she could not stoop, reach above shoulder level, squat, kneel, climb ramps or stairs, climb ladders, ropes or scaffolds, crouch or crawl (AR 316). Plaintiff also had extensive environmental limitations. She could never work at unprotected heights, work near dangerous moving machinery, or work in areas with temperature extremes, humidity, wetness, or pulmonary irritants (AR 317). Plaintiff could, however, occasionally (i.e., less than two hours per day) use her hands and fingers,

6

and operate hand controls (AR 316-17) and could occasionally work with vibration, noise and motor vehicles (AR 317). She had unspecified limitations in balancing herself, and could only stand for 10 minutes at a time and sit for 15 minutes at a time (AR 315, 318). The doctor attributed plaintiff's limitations to chronic lower back pain with possible stenosis, chronic cervical pain, degenerative joint disease in her hands and left knee, gastroesophageal reflux disease, asthma, vertigo and plantar fascitis (AR 315-18).

The ALJ performed only a cursory review of Dr. Hoogmoed's opinion, with that review focused on plaintiff's periodic use of a cane:

> The undersigned has also considered the opinion offered in February 2011 by R. Hoogmoed, M.D., the claimant's treating physician, regarding her physical capacities and accords such little weight as such is not consistent with the record as a whole. For instance, he indicated that the claimant is not capable of walking effectively, citing her use of a cane "four or five days per month when left knee is painful," yet he did not indicate that her use of the cane is medically necessary. His assessment appears to be based upon the claimant's subjective complaints alone, as no objective evidence to support his conclusions was referenced, especially with regard to the standing, walking, and postural limitations he cited (Exhibit 13f).

(AR 19). While Dr. Hoogmoed's opinion appears to be overly-restrictive when compared with the extent of plaintiff's daily activities, *see* discussion in § III.B.3, the ALJ has failed to articulate good reasons for not crediting the doctor's opinion. *See Wilson*, 378 F.3d at 545; 20 C.F.R. § 404.1527(c)(2). Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Dr. Hoogmoed's February 10, 2011 opinion consistent with 20 C.F.R. § 404.1527(c)(2).

**B.  The ALJ gave no valid reasons for rejecting plaintiff's reported symptoms and limitations.**

Plaintiff disputes the ALJ's credibility determination with respect to the ALJ's review of her medical record, her symptoms and her limitations. An ALJ may discount a claimant's

7

credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

Here, plaintiff objects to numerous statements made by the ALJ in reviewing the medical evidence. Given the scope of plaintiff's objections, the Court will reproduce that relevant portions of the ALJ's decision:

> The claimant testified that she is unable to work because of pain in her feet, left shoulder, and neck, as well as achiness in her hands. She stated that the pain in her feet is due to inflammation (plantar fasciitis) which she began experiencing in the 1990s. She related that her feet are most painful when she takes her first steps of the day and remain sore throughout the day, explaining that she also sometimes experiences a sharp pain in her feet that "shoots up her legs." She remarked that this pain is temporarily relieved by sitting but that, in general, it has not improved since it began in the 1990s and was not improved by the surgery she underwent in 2003. She stated that her left shoulder pain, and associated pain in her neck, is the result of a work-related injury that occurred in November 1998. She subsequently underwent

8

surgery to this shoulder in 2001 and again in September 2008. Aggravating factors of her neck and left shoulder pain were noted to be holding her neck in one position for too long, repetitively using her arms, reaching with her left arm, and lifting heavy items. She also reported that her hands ache, especially when driving, and will "go to sleep" if she uses them a lot. She attributes these symptoms to the carpal tunnel release surgeries she underwent to each wrist in the 1980s and arthritis. She noted that her doctor has advised her to not lift over five pounds occasionally, and stated that just holding an item weighing two pounds results in her having to "let go and straighten her hands."

For symptom relief, the claimant testified that she currently uses Motrin/Ibuprofen, a nonprescription anti-inflammatory, and Flexeril, a prescription muscle relaxant. No side-effects of these were alleged. She mentioned that she also performs exercises for her neck and left shoulder pain and that she will often take a nap "if at home" for two or three hours because she does not sleep well at night due to her neck and left shoulder pain. She also related that she typically uses a cane four or five days per month.

The claimant maintains an independent residence; she testified that she and her husband reside in a house on four acres of land in the country where they maintain six horses. She reported her daily activities to consist of preparing meals, performing household chores, checking for e-mail on the computer, helping to tend to the feeding and grooming needs of the horses, reading, visiting with friends or family members, and watching television. She remains able to drive as the need arises, shop for groceries, load/unload the dishwasher, dust furniture, vacuum carpet, launder clothes, handle financial matters, and attend to her personal needs without assistance. She indicated that her care of the horses involves filling their water tanks, removing hay from an utility wagon that she drives around, and sometimes brushing them; she also noted that she can use the riding lawnmower for about 20 to 30 minutes at a time. She enjoys fishing once or twice per year, attending auctions in nice weather, e-mailing friends, watching Nascar races, and going out to eat a meal in a restaurant on occasion. She did not allege any difficulty getting along with others or responding appropriately to those in authority and reported maintaining several friendships (Testimony and Exhibits 3e, 4e, 6e, and 8e).

The claimant did not allege that her ability to perform work activity is limited by a mental impairment when she presented for her administrative hearing. She did not report that she is prescribed use of any medication for emotional symptoms, nor does the record document any receipt of counseling or referrals for such by her medical sources. The record contains no evidence to indicate that she is unable to understand, remember, or carry out job instructions; maintain attention or concentration to complete tasks; respond appropriately to supervisors, coworkers, or the general public; or tolerate common stresses in routine work settings. Therefore, the undersigned finds that the record contains no evidence to establish the existence

9

of any medically determinable mental impairment which would preclude the claimant's performance of work activity.

After careful consideration of all the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, her statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent alleged.

Consistent with the claimant's testimony, a review of the medical evidence of record reveals that she underwent surgery to her left foot to excise a neuroma in late July 2003. Treatment notes from L. Zielaskowski, D.P.M. indicate that this surgery was performed without complication and that no complication developed during her recovery. Contrary to her testimony that she received no benefit from this surgery, when examined in late September 2003, her podiatrist noted her report of having obtained "great relief" from her receipt of physical therapy; she reported experiencing only "some mild discomfort at the end of the day." She was tolerating the wearing of a regular shoe and was "ready to return to work." It had been noted at her visit two weeks earlier that she had helped to "put in a fence" (Exhibit 1f). A treatment note from the claimant's primary-care physician, R. Hoogmoed, M.D., regarding her visit in December 2009 states that he attributed her feet pain to plantar fasciitis (Exhibit 12f); however, there is no evidence to document any specific treatment for her feet since her last visit with Dr. Zielaskowski in September 2003, and certainly none since March 10, 2008, the date she alleges an onset of disability. While the claimant may continue to experience some discomfort in her feet related to plantar fasciitis, the record clearly indicates, per her own admissions, that this discomfort does not significantly restrict her performance of daily activities, nor is there any evidence to indicate that she has ever been unable to ambulate effectively as a result of this condition.

A review of the medical evidence of record also reveals that R. Palmitier, M.D. examined the claimant for her complaint of pain affecting her neck and left shoulder in mid-November 2007. She related that she was still working full-time but anticipated being laid-off at the end of the year when her employer was expected to close the factory where she worked. A bone scan and magnetic resonance imaging (MRI) scan of her cervical spine were ordered. The results of the bone scan were negative for any abnormality. The MRI scan revealed degenerative changes and a right-sided bulging disc at the C6-7 vertebral level; radiculopathy was not suspected since her symptoms were left-sided. Examination revealed aching in her left shoulder with extremes of range of motion testing; impingement testing was negative, upper extremity reflexes were symmetric, and there was no sensory deficit. Dr. Palmitier noted that her medical history included arthroscopic surgery to her left shoulder; his prior treatment records indicate that this was performed sometime

before March 2003 and that she returned to work activity following her recovery period (Exhibits 10f and 11f/pp 14, 16-18).

The evidence of record next indicates that the claimant sought an examination for her complaint of pain affecting her left shoulder from W. Schwab, M.D. in late February 2008. His treatment records state that a MRI scan of her left shoulder revealed an inferior spur which he believed to impinge her acromion and an arthroscopic resection of her acriomioclavicular joint was advised. Consistent with the claimant's testimony, the record indicates that she underwent surgical decompression to her left shoulder in September 2008 after pre-operative physical therapy failed to significantly improve her symptoms. Subsequent treatment included use of medication and a course of physical therapy, which she reported to slightly improve her pain-levels. Again, her recovery progressed without complication. When last examined by Dr. Schwab in late January 2009, she demonstrated a full range of motion of the left shoulder and he agreed that further physical therapy was not necessary. Treatment records from Dr. Hoogmoed, the claimant's primary-care physician, indicate that he continues to treat her general medical concerns, which includes monitoring the medication therapy prescribed for her pain complaints and asthma and revising such as necessary (Exhibits 4f, 5f, 6f, and 12f).

Again, per the claimant's own admission, she has clearly maintained a significant amount of daily activities since March 10, 2008, the date she alleges an onset of disability. She has not required extensive treatment on a recurrent or ongoing basis for her left shoulder and neck pain since recovering from the surgery she underwent to her shoulder in September 2008, such as recurrent courses of physical therapy, aquatherapy, use of a TENS unit, etc., nor does she routinely utilize treatment modalities or pain-relieving measures other than medication. She has never undergone any surgery to her neck, nor has such been assessed as warranted by any treating or examining physician. In addition, the medication regimen prescribed for her pain complaints is not extensive, consisting of one anti-inflammatory and one muscle relaxant, and such has not required significant revision since at least May 2006; she reported using Ibuprofen and Flexeril when she sought emergent treatment that month for an injury to her face (Exhibit 2f/p.1). Although the claimant may have experienced an increase of her neck and left shoulder symptoms for several months in 2008, treated by surgery to her left shoulder in September of that year, the undersigned finds it reasonable to conclude that the overall record is not reflective of a significant worsening of her pain to preclude the performance of all work activity.

While the undersigned finds it reasonable to conclude that the claimant's degenerative joint disease of the left shoulder, degenerative changes of the cervical spine, and bilateral plantar fasciitis compromise her physical capabilities, the overall

record does not establish that these impairments impose limitations greater than those reflected within the residual functional capacity determination of this decision.

(AR 16-19).

### 1.     Plaintiff's 2003 foot surgery

Plaintiff contends that the ALJ mischaracterized her testimony with respect to the benefit received from her foot surgery in 2003. On July 25, 2003, plaintiff underwent surgery to remove a neuroma on her foot (AR 196). By September 29, 2003, plaintiff reported "great relief through physical therapy" with only "mild discomfort" at the end of the day (AR 195). There is no further record of treatment for plaintiff's foot since her 2003 surgery.

At the administrative hearing held on March 3, 2011, when plaintiff was asked if she had any recurrence of the foot neuroma, she answered:

> No, but if I had to do it again I probably wouldn't have the surgery. It, it – they still will hurt to some extent but the sharp pains that shoot up my leg from disturbing that nerve are just as disturbing as the pain was before the surgery. I wouldn't suggest it to anyone.

(AR 52). The medical record from 2003 reflects that plaintiff benefitted from the foot surgery. To the extent that plaintiff's testimony can be construed as presenting either recurring or new foot problems in 2011, such claims are not supported by any subsequent medical evidence.

### 2.     Plaintiff's objections with respect to the ALJ's consideration of "minimal treatment" and "minimal findings"

#### a.     Minimal Treatment

The ALJ determined that plaintiff's claim of disabling foot, shoulder and neck pain were not credible, in part because plaintiff sought no treatment for her foot since the surgery and sought only minimal treatment for her shoulder and neck. Plaintiff contends that the ALJ engaged in "doctor playing" by "citing the lack of more extensive treatment" for her conditions. Plaintiff's

12

Amend. Brief at pp. 14-15. It is well-established that an "ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Meece v. Barnhart*, 192 Fed. Appx. 456, 465 (6th Cir.2006). However, it is the ALJ's function to resolve conflicts in the evidence and determine issues of credibility. *See Siterlet v. Secretary of Health and Human Services*, 823 F. 2d 918, 920 (6th Cir. 1987). Thus, courts acknowledge that an ALJ may discount the claimant's credibility if the claimant received only a mild or conservative course of treatment for an alleged disabling impairment. *See Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990) (a claimant's use of only mild medications undercuts complaints of disabling pain). *See also, Conger v. Astrue*, 453 Fed. Appx. 821, 829 (10th Cir. 2011) (where the claimant received "essentially routine and conservative medical care," such treatment "was not indicative of disabling impairments"); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *McKenzie v. Commissioner*, No. 99-3400, 2000 WL 687680 at * 4 (6th Cir. May 19, 2000) ("[p]laintiff's complaints of disabling pain are undermined by his non aggressive treatment"); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (a claim of disabling pain lacked credibility where the claimant relied on a conservative course of treatment).

    **b.**  **Minimal Findings**

    Plaintiff also contends that the ALJ erred by citing from W. Schwab, M.D.'s January 17, 2009 report that plaintiff "demonstrated a full range of motion of the left shoulder" and that the doctor agreed "that further physical therapy was not necessary" (AR 18). Dr. Schwab's report stated in pertinent part as follows:

13

> HISTORY: I saw [plaintiff] back today. Her shoulder is reasonable. She has complete full range of motion, still a fair amount of pain with it although she says it is slightly better, but only slightly better than it was before surgery.
>
> I just do not see that there is probably much else to do here for this. Again motion itself is fine. I do not know that any further therapy is going to change this at all, and again the cuff itself looked just fine at the time of surgery. Thus, I think it is probably best left alone at this point.

(AR 268).

Plaintiff contends that the ALJ's reference to the full range of motion "impugns reported symptoms and thus crosses the line into doctor playing." Plaintiff's Amend. Brief at p. 16. The Court disagrees. Plaintiff's surgeon reported that she had a complete range of motion. While plaintiff may feel that the doctor's opinion with respect to her having a full range of motion undermines her disability claim, the ALJ did not err by referring to this opinion.

### 3. Plaintiff's ADLs

Plaintiff contends that the ALJ improperly discounted her credibility based upon her ADLs. As discussed, *supra*, the ALJ found that plaintiff performed activities such as preparing meals, performing household chores, checking for e-mail on the computer, helping to tend to the feeding and grooming needs of the horses (e.g., filling water tanks, removing hay from a utility wagon that she drives and brushing them), reading, visiting with friends or family members, watching television, attending auctions, fishing once or twice a year, and using a riding lawnmower. While plaintiff may not have engaged vigorously in all of these activities, such endeavors are not indicative of an invalid, incapable of performing sedentary types of work. *See, e.g., Pasco v. Commissioner of Social Security*, 137 Fed. Appx. 828, 846 (6th Cir. 2005) (substantial evidence supported finding that plaintiff was not disabled where plaintiff could "engage in daily activities such as housekeeping, doing laundry, and maintaining a neat, attractive appearance" and could "engage

14

in reading and playing cards on a regular basis, both of which require some concentration") (footnote omitted); *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993) (a claimant's ability to perform household and social activities on a daily basis is contrary to a finding of disability); *Gist v. Secretary of Health and Human Services*, 736 F.2d 352, 358 (6th Cir. 1984) (a claimant's capacity to perform daily activities on a regular basis will militate against a finding of disability). The ALJ could properly discount plaintiff's credibility based upon her ADLs.

    **4.**    **Summary**

After reviewing the record, the court concludes that there is no compelling reason to disturb the ALJ's credibility finding. *See Smith*, 307 F.3d at 379. The court disagrees with plaintiff's various characterizations of the ALJ's decision as "playing doctor" and "cherry picking the record." Plaintiff's Amend. Brief at p. 17. The ALJ discussed, at length, the inconsistencies between plaintiff's claims and other evidence of record. Plaintiff's alleged errors essentially ask this court to re-weigh the evidence with respect to portions of plaintiff's medical history and then determine whether it (the court) agrees (or disagrees) with the ALJ's credibility determination as to that particular event. In short, plaintiff is asking this court to perform a *de novo* review of the record and re-evaluate her credibility. It is beyond the scope of this court's review to perform such a review. *See Brainard*, 889 F.2d at 681.

Substantial evidence supports the ALJ's decision, which sets forth a reasonable explanation for discrediting plaintiff's testimony regarding the severity of her medical condition and resulting limitations. The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision. *Willbanks*, 847 F.2d at 303. As the court explained in *Mullen v. Bowen*, 800 F.2d 535 (6th Cir. 1986):

15

> The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen*, 800 F.2d at 545, quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984).

Accordingly, plaintiff's claims regarding the ALJ's credibility determination should be denied.

### IV.    Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), for re-evaluation of Dr. Hoogmoed's February 10, 2011 opinion consistent with 20 C.F.R. § 404.1527(c)(2).


Dated:  August 30, 2013                                     /s/ Hugh W. Brenneman, Jr.
                                                            HUGH W. BRENNEMAN, JR.
                                                            United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).